# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0288-WC

BLUELINX                                                                                        APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2022-CA-1027
WORKERS' COMPENSATION NO. WC-19-64871

ESTATE OF DAVID WILLIAMS; GREG                                      APPELLEES
HARVEY, ADMINISTRATIVE LAW
JUDGE; ELIJAH WILLIAMS, MINOR
CHILD; TRACEY BURNS, EXECUTRIX;
AND WORKERS' COMPENSATION
BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

In this workers' compensation case, David Williams underwent a work-related surgical procedure on his ankle. Tragically, Williams passed away two days later. After considering competing expert opinions, the Administrative Law Judge (ALJ) concluded that the surgery proximately caused Williams' sudden cardiac death and awarded death and dependent benefits. Bluelinx argues on appeal that the ALJ's determination that the surgery was the cause of Williams' death was not based on substantial evidence. Upon review, we agree with the Court of Appeals and the Worker's Compensation Board (Board)

that the ALJ's Opinion properly considered the expert opinion offered on behalf of Williams' Estate.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2019, fifty-year-old Williams underwent a left insertional Achilles debridement and repair with excision of Haglund's deformity, and a left flexor hallucis longus transfer. The surgery proceeded with no complications, and he was discharged the same day. Two days later, Williams' experienced difficulty breathing, and his son called 911 and performed CPR. EMS found Williams unresponsive. EMS took Williams to the emergency room, where he was pronounced dead. Williams' medical records indicated he had multiple and co-morbid health conditions including congestive heart failure, deep vein thrombosis, diabetes, liver abscesses, obesity, bacteremia, hypertension, gout, and cellulitis. An autopsy was not performed and the death certificate identified the cause of death as "complications of congestive heart failure."

Tracey Burns filed an Application for Benefits on behalf of her deceased brother. One of the contested issues, and the related issue in his appeal, was whether the work-related surgery caused Williams' death.[1] Dr. Wunder, a physiatrist, and Dr. Corl, a cardiologist, provided expert medical opinions. Dr. Wunder and Dr. Corl disagreed as to whether Williams had congestive heart

---

[1] There is no dispute that in September 2018 Williams sustained a work-related left ankle injury and that the October 2019 surgery was medically reasonable and necessary to treat the work injury.

2

failure and the surgery caused Williams' death.[2]  Dr. Corl expressed that he did

not think the surgery had any role in Williams' death.  Dr. Corl was of the

opinion that there was no direct causal relationship between Williams'

---

[2] The ALJ's opinion summarizes the expert evidence and states in part:

Dr. Wunder reviewed Williams' medical records.  He opined that prior to the work injury Williams had congestive heart failure, DVT, diabetes, liver abscesses, obesity, bacteremia, hypertension, gout, and cellulitis. . . .  Dr. Wunder reviewed and made note that Williams' preoperative cardiac condition was stable and well controlled.  Dr. Wunder noted Williams' two hospital stays in 2014.  He had chest pain and was initially diagnosed with congestive heart failure.  His symptoms recurred and a CT scan revealed the presence of liver abscesses and bacteremia.  Williams spent over 40 days in the hospital due to the liver abscesses.  Dr. Wunder opined Williams' diabetes and congestive heart failure were controlled and appropriately treated prior to the surgery.  However, he opined Williams' cardiac condition put him at higher risk of complications or death during any surgical procedure.

Dr. Wunder opined the surgery on October 25, 2019, caused Williams' heart to fail which resulted in his death.

Given the well-documented stable condition of Mr. Williams' congested heart failure, it is unlikely he would have succumbed to congestive heart failure on October 27, 2019, or a reasonable time thereafter, if he had not undergone the work-related surgery on October 25, 2019.  As noted above, there is perioperative risk factor of death congestive heart failure.

Dr. J.D. Corl . . . reviewed Williams' medical history and treatment . . . .  Dr. Corl acknowledged Williams' history of hospitalization for cardiac symptoms in January 2014, and a multitude of diagnoses including congestive heart failure . . . .  Dr. Corl specifically identified Williams' cardiac risk factors as being: elevated blood pressure, hyperlipidemia, diabetes, morbid obesity, and sleep apnea.  The diagnosis of congestive heart failure was something Dr. Corl disagreed with.  He did acknowledge that if Williams had congestive heart failure it would be another comorbid condition.  He pointed out Williams' history of non-compliance with medical treatment and poorly controlled diabetes and blood pressure.  Dr. Corl noted Williams weighed approximately 370 pounds and was diabetic.  He opined that all of those conditions statistically make sudden cardiac death more likely.

3

successful/uncomplicated elective outpatient left ankle surgery on October 25, 2019, and his sudden cardiac death on October 27, 2019.

Dr. Wunder's supplemental report, rebutting Dr. Corl's opinion, is the last medical evidence entered into the record. This report, the basis of Bluelinx's argument on appeal, states in relevant part:

> I am surprised by the statements by Dr. Corl, as it is irrefutable that cardiac complications occur in those undergoing major, noncardiac surgery. In fact, cardiac complications are common after noncardiac surgery, and include sudden cardiac death. The single largest cause of perioperative death, I would agree with Dr. Corl, would be major adverse cardiac events. The number of patients undergoing noncardiac surgery is wide and is growing, and annually 500,000 to 900,000 of these patients experience perioperative cardiac death nonfatal myocardial infarction, or nonfatal cardiac arrest. Noncardiac surgery is associated with significant cardiac morbidity, mortality, and cost. Patients undergoing noncardiac surgery are at risk for major perioperative cardiac events. *Perioperative myocardial infarction occurs primarily during the first three days after surgery, as was noted here.*[3] Some theorize that patients are receiving narcotic therapy and may not experience cardiac symptoms during a myocardial infarction. On studies which have examined perioperative cardiac death, authors attributed the cause to myocardial infarction in 66 percent of the cases and to arrhythmia or heart failure in 34 percent of the cases. It is felt that surgery with associated trauma, anesthesia, analgesia, intubation, extubation, pain, bleeding, and anemia all initiate inflammatory, hypercoagulable stress and hypoxic states, that are associated with perioperative elevations in troponin levels and mortality. It is irrefutable that general anesthesia can initiate inflammatory and hypercoagulable states, and a sudden cardiac death syndrome. The stress of the surgery also involves increased levels of catecholamines and increased stress hormone levels. Perioperative hypoxia can also lead to myocardial ischemia. It is felt that 75 percent of deaths after noncardiac surgery are due to cardiovascular complications, as outlined by Dr. Corl, and I am certain he must be aware of this. I have enclosed a review article from the *New England Journal of Medicine* supporting that noncardiac surgery can precipitate complications such as death

---

3 Emphasis added.

4

from cardiac causes myocardial infarction or injury, cardiac arrest, or congestive heart failure.  The number of patients receiving noncardiac surgery is increasing worldwide.  More than 10 million adults worldwide have a major cardiac complication in the first 30 days alter noncardiac surgery.  As the *New England Journal of Medicine* article points out, if perioperative death were considered as a separate category, it would rank as the third leading cause of death in the United States.  I am surprised that Dr. Corl was not aware of that.  Surgery initiates an inflammatory response, stress hypercoagulability activation of sympathetic nervous system, and hemodynamic compromise, all of which can trigger cardiac complications.

I am really confused as to what point Dr. Corl is trying to make.  He seems to be arguing that the claimant did not have congestive heart failure.  He points out that no autopsy was done, and the cause of death was speculation.  In addition to cardiac complications, sudden death can also be associated with deep venous thrombosis and pulmonary embolism, and Mr. Williams had a history of DVT already.  Whichever complication his cause of death is attributed to, (congestive heart failure or pulmonary embolism), they occur at an increased frequency in the perioperative state.  There is no way that Dr. Corl can make the statement that there was no direct causal relationship between Mr. Williams noncardiac, left ankle surgery on October 25, 2019, and his death on October 27, 2019.  Sudden cardiac death is a known complication of noncardiac surgery.

The ALJ noted that Dr. Wunder supported his statements with an article from the *New England Journal of Medicine* (*NEJM*) and that article details the relationship between cardiac complications and a patient undergoing noncardiac surgeries.

Following the discussion of the evidence, the ALJ made his findings of facts and conclusions of law.  The ALJ stated in part:

> Dr. Corl's deposition in this case is thorough and persuasive.  The ALJ is very mindful of the temporal relationship between the surgery and Williams untimely death.  Within two days of the surgery Williams died. . . .  The law . . . dictates the undersigned decide this case based on the evidence from the medical experts.  Dr. Wunder has offered a sound opinion regarding Williams' death.

5

However, Dr. Wunder is not a cardiologist and Dr. Corl is. Dr. Corl thoughtfully explained why he did not believe Williams had congestive heart failure. He explained the hospitalization in 2014, and the role of Williams' liver abscesses. Dr. Corl also explained all the comorbidities Williams had that he believed contributed to the sudden cardiac death. He was very specific that the surgery played no role in Williams' death. In the years after 2014, Williams had no cardiac treatment and had normal cardiac functioning. Post-operatively Williams' heart was performing normally and he was discharged home with normal cardiac performance.

Dr. Wunder's rebuttal report is also persuasive. In that report, Dr. Wunder opined cardiac complications commonly occur in patients who undergo noncardiac surgery. One of the things that occurs is sudden cardiac death. He opined myocardial infarction following surgery primarily occurs within three days of the procedure. He also noted general anesthesia can cause inflammation and sudden cardiac death. The report includes an article from the *New England Journal of Medicine* that explores sudden cardiac death as a consequence of noncardiac surgery.

A reading of the totality of the evidence is important. The undersigned interprets Dr. Wunder's opinion to be that Williams surgery resulted in a cardiac event that caused his death. Dr. Corl also opines a cardiac event occurred that caused Williams death. However, he is of the opinion that the surgery did not result in or cause the cardiac event. Dr. Corl reasoned that events occur to all persons who die from sudden cardiac death but that does not mean that those events are causative.

Here, the ALJ acknowledges Dr. Corl's superior qualifications on cardiac issues. However, Dr. Wunder has responded to Dr. Corl's opinion and cited evidence from the *New England Journal of Medicine*. The question is whether the surgery proximately caused the sudden cardiac death. Dr. Corl testified about statistical probability based on the comorbid factors. Williams had the same comorbid factors for years prior to the surgical procedure. Two days after being placed under general anesthesia he was found unresponsive and died. The ALJ agrees with Dr. Corl that Williams did not have congestive heart failure and that he suffered sudden cardiac death. However, the ALJ finds Dr. Wunder's opinion that the surgery caused the sudden cardiac event persuasive. This is true in light of the facts that Williams was not treating for congestive heart failure, did not have pre-operative cardiac concerns or red flags. It is possible Williams might have had a sudden cardiac event on October 27, 2019, if he had not had surgery. It is also possible he could have had sudden cardiac at any point for the years he carried the same comorbidities described by Dr. Corl. However, Williams did not

have a sudden cardiac death until two days after the surgery. Dr. Wunder has offered sufficient evidence that noncardiac surgery is a known cause of sudden cardiac death. The facts coupled with Dr. Wunder's opinion are persuasive to the ALJ and cause the ALJ to conclude Williams' death by a sudden cardiac event was proximately caused by the work-related surgical procedure.

The ALJ awarded death and dependent benefits per KRS 342.750(6) and KRS 342.750(3). Bluelinx filed a Petition for Reconsideration, arguing that the ALJ committed patent error as his decision was not supported by "well-reasoned substantive evidence of an expert witness." Bluelinx argued that the *NEJM* article was inapplicable as it discussed the cardiac complications arising from major non-cardiac surgery and not cardiac complications arising from minor non-cardiac surgery. In its Order denying the petition, the ALJ stated in pertinent part:

> It is important to understand what the ALJ found. The undersigned found Dr. Wunder's opinion that the surgery caused a sudden cardiac event that resulted in Williams' death most persuasive. In making that finding the ALJ relied on the literature cited by Dr. Wunder and his opinion that surgical procedures increase the risk of sudden cardiac death within the first three days after the procedure. Those opinions were considered along with the fact that Williams' risk factors for sudden cardiac death existed for years and that the only variable in the days prior to his death was the surgical procedure. Dr. Wunder offered a sound opinion that non-cardiac surgery increases the risk of a cardiac event in the three days that follow the procedure. Dr. Corl identified the risk for sudden cardiac death as building risk, continuous risk. He indicated Williams had comorbidities for sudden cardiac death for years. Nonetheless it was not until two days after the work-related foot surgery that Williams died of sudden cardiac death. The timing of Williams death, coupled with Dr. Wunder's opinion regarding the role of non-cardiac surgery causing sudden cardiac death was persuasive to the ALJ.

Bluelinx appealed to the Workers' Compensation Board, and the Board affirmed the ALJ. The Board considered that no objection was filed to the

introduction of Dr. Wunder's reports or the *NEJM* article attached to the November 21, 2021 report and concluded that Bluelinx was precluded from challenge/objection to Dr. Wunder's report and his opinions. Accordingly, the Board further concluded that the ALJ enjoyed the discretion to consider the opinions expressed by Dr. Wunder. The Board also found Bluelinx's assertion that the *NEJM* article was inapplicable unconvincing. The Board observed that Bluelinx's argument that Williams underwent minor non-cardiac surgery is unsupported by the medical evidence in the record. The Board also reviewed the *NEJM* article and concluded that Bluelinx's assertion, an assertion based upon Bluelinx's counsel's interpretation only, that it only relates to high-risk surgery was unsupported. Consequently, the ALJ was free to infer the *NEJM* article was applicable to the instant case since no contradictory opinions were proffered by Bluelinx. The Board concluded that the *NEJM* article constituted probative medical evidence concerning the cause of Williams' death.

Bluelinx appealed to the Court of Appeals. Bluelinx argued that the Board erroneously concluded that the ALJ's judgment was supported by substantial evidence when the basis of the judgment – Dr. Wunder's causation opinion and the *NEJM* article – are devoid of any probative value; Bluelinx asserted that the facts espoused by Dr. Wunder are unsupported or are gleaned from the irrelevant *NEJM* article. The Court of Appeals affirmed the Board.

8

## ANALYSIS

Bluelinx maintains its argument that the ALJ's conclusion that the surgery was the cause of Williams' death was not based on substantial evidence and the ALJ's Opinion must be reversed. Bluelinx asserts that the ALJ's award was based on a misrepresentation of the scientific literature and that the ALJ's Opinion is not based upon reasonable medical probability. Bluelinx argues that the ALJ, the Board and the Court of Appeals didn't scrutinize Dr. Wunder's references to the *NEJM* article to determine that it was actually applicable to this claim.

The ALJ, as fact-finder, has sole authority to determine the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky. 1985). When conflicting evidence is presented, the ALJ may choose whom and what to believe. *Pruitt v. Bugg Bros.,* 547 S.W.2d 123 (Ky. 1977). The ALJ has the right to believe part of the evidence, and disbelieve other parts of the evidence whether it came from the same witness or the same total proof. *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky. 1977). If the decision of the ALJ is supported by any substantial evidence of probative value, it may not be reversed on appeal. *Special Fund v. Francis,* 708 S.W.2d 641 (Ky. 1986); *Newberg v. Armour Food Co.,* 834 S.W.2d 172 (Ky. 1992). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chem. Co.,* 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted).

9

Bluelinx argues that the ALJ relied upon evidence which was not of probative value and upon which he could not draw inferences because he relied on unsupported "facts" or statistics from Dr. Wunder and "scientific" information which does not relate to this claim. Bluelinx asserts that the opinions of the ALJ, the Board, and the Court of Appeals are unreasonable as the "evidence" upon which they rely has no relevant consequence to this claim. For example, Bluelinx points out that in the ALJ's Order on Petition for Reconsideration, the ALJ affirmed that he "relied on the literature cited by Dr. Wunder and his opinion that surgical procedures increase the risk of sudden cardiac death within three days after the procedure," but argues that because Dr. Wunder's facts are not supported, i.e., he does not provide a reference for his facts or statistics, there is no way to know whether these "facts" are accurate.

The Court of Appeals dealt with Bluelinx's evolving argument in the same manner as the Board. First, the Court of Appeals explained that

> To the extent Bluelinx claims that the ALJ was not permitted to rely on Dr. Wunder's rebuttal opinion or the Journal article, it is notable that Bluelinx neither challenged the admissibility of this evidence in the proceedings before the ALJ nor raised the Board's refusal to rule on the unpreserved claim in the matter at bar. As a general rule, "when the question is one properly within the province of medical experts, the [ALJ] is not justified in disregarding the medical evidence." *Kingery v. Sumitomo Electric Wiring*, 481 S.W.3d 492, 496 (Ky. 2015) (quoting *Mengel v. Hawaiian–Tropic Northwest and Central Distributors, Inc.,* 618 S.W.2d 184, 187 (Ky. App. 1981)). Exceptions exist in cases involving observable causation, or if the medical opinion is the result of the claimant providing an inaccurate or misleading medical history. *Id.*; *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004). [The Court of Appeals] is unaware of a similar exception based solely on the expert's failure to source his opinion,

10

and Bluelinx has cited no relevant authority in support. Here, whether the surgery was the proximate cause of Williams' death two days later is clearly an issue to be resolved by medical experts, and there is no contention that Dr. Wonder was not aware of the precise surgical procedure Williams underwent or his relevant medical history. Accordingly, the ALJ was not, as Bluelinx asserts would be proper, permitted to wholly disregard Dr. Wunder's opinion and accept Dr. Corl's by default. Rather, the ALJ was required to weigh the evidence.

We agree with the Board and the Court of Appeals. The ALJ had discretion to consider both expert opinions when determining the facts of this case.

Finally, as to Bluelinx's argument that when the Court of Appeals concluded that the ALJ was able to rely on the opinion of Dr. Wunder because the issue of causation is an issue to be resolved by medical experts, the Court of Appeals missed Bluelinx's point that almost every statement by Dr. Wunder is inapplicable to the claim, we must conclude otherwise. The Court of Appeals addressed Bluelinx's challenge to the *NEJM* article's relevance later in its opinion. The Board had pointed out that Bluelinx had not preserved its argument that Williams had undergone a minor surgery and therefore the *NEJM* article was not relevant to this case. And the Court of Appeals explained that while Bluelinx would have the appellate court evaluate the applicability of the source material cited by the *NEJM* article, Williams would not have an opportunity to respond to the argument that it did not constitute sufficient evidence. Further, the Court of Appeals noted that it was not permitted to consider matters not disclosed by the record. As the Board and Court of Appeals have pointed out, Bluelinx did not seek redress of its complaints before

11

the ALJ. Upon review of the record and the arguments, like the Board and the Court of Appeals, we find no basis for concluding that the ALJ's thorough Opinion was not supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, the Court of Appeals' opinion, which upheld the Board's decision in favor of the Appellees, is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Mark Reynolds Bush
Samantha Steelman
Reminger Co., L.P.A.


COUNSEL FOR APPELLEES:

Michael Andrew Ryan
Lawrence & Associates


ADMINISTRATIVE LAW JUDGE:

Hon. Greg Harvey


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey